**UNITED STATES of America,**

**v.**

**Dexter W. DAUGHTRY, Appellant.**

**No. 80–1656.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1980.

Decided Feb. 12, 1981.

John F. Conroy, Washington, D. C. (appointed by this Court), for appellant.

John C. Aisenbrey, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Paul N. Murphy, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before WILKEY and WALD, Circuit Judges and MacMAHON,* Chief Judge for the United States District Court for the Southern District of New York.

Opinion for the Court filed by Chief Judge MacMAHON.

MacMAHON, Chief Judge:

Appellant Dexter W. Daughtry was indicted under 18 U.S.C. § 1708 for possession of stolen mail. Following a non-jury trial before the Honorable June L. Green in the United States District Court for the District of Columbia, defendant was convicted and subsequently sentenced to a prison term of two years. Appellant contends (1) that the evidence below was insufficient to prove possession of stolen mail in violation of section 1708, and (2) that the proof impermissably varied from the crime alleged in the indictment. Finding both contentions unpersuasive, we affirm for the following reasons.

*The Facts.*

The House of Representatives has created and maintains its own post office to facilitate the flow of House mail. The United States Postal Service delivers mail to the House Post Office, where it is sorted, bundled and distributed by House clerks to the offices of the addressees. The Post Office also collects outgoing mail and sells stamps.[1] Appellant was employed by the House as a mail clerk and assigned to collect, bundle and deliver mail to the doors of several Congressman's offices, including that of Representative Trent Lott.

It was stipulated below that, if called, Gloria Pace, a bookkeeper for the Home Builders Association of Mississippi, would testify that she sealed two checks in one envelope addressed to "Congressman Trent Lott, 2400 Rayburn House Office Building, Washington, D.C. 20512, Attn: Tom H. Anderson, Jr.," and placed it in the mail between August 30 and September 4, 1979. It was also stipulated that Mr. Anderson, administrative assistant to Representative Lott, would testify that neither he, nor the Congressman, nor any staff member had received these checks or authorized anyone else to receive, possess or cash them. Finally, the former manager of a Washington, D.C. liquor store testified that appellant, using his House employee identification card, attempted to cash these checks at the store on September 7, 1979. Appellant, however, left abruptly when the manager telephoned to verify appellant's authority to negotiate the checks, leaving the checks and his identification card behind.

*Discussion.*

■ Appellant contends initially that 18 U.S.C. § 1708 does not reach a theft of the checks because the statute does not protect mail after it is delivered to the House Post Office. We reject this contention and hold that the House Post Office is an "other authorized depository for mail matter" within the meaning of section 1708 and that the theft was, therefore, within the scope of the statutory prohibitions.

Section 1708 reads in relevant part:

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or *other authorized depository for mail matter*, . . . any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein . . .

Shall be fined not more than $2,000 or imprisoned not more than five years, or both. (Emphasis added).

Our construction of section 1708 is aided by a judicious "appraisal of the realities of

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Stamps are sold at the House Post Office pursuant to a contractual arrangement between the Postal Service and the House. This part of the House mail operation is a "contract station." *See* 39 C.F.R. § 241.2(b) (1979). Although a "station" is protected under section 1708, the Government admitted at oral argument that this statutory language protected only the stamp-vending facility.

delivering and receiving mail in a modern environment." *Smith v. United States*, 343 F.2d 539, 542 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). The inclusiveness of the statutory language and the Congressional intent to ensure fully the integrity of the mails, *United States v. Lopez*, 457 F.2d 396 (2d Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972), mandate an interpretation of the statute consistent with a realistic understanding of the demands currently imposed on the postal system.

"Authorized depository" for purposes of section 1708 is defined as:

> Every letterbox or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route, star route, or other mail route. . . .

United States Postal Service, *Domestic Mail Manual* § 151.1, *incorporated by reference*, 39 C.F.R. § 111.1 (1979).

A single, standard letterbox is sufficient to handle the daily postal deliveries to the ordinary homeowner or apartment dweller. A much larger receptacle is needed, however, by a member of Congress, who receives scores of mailed items every day. Four hundred thirty-five Congressmen collectively require a full-sized office simply to house incoming mail. Certainly the House acted with prudence when it created a post office where bags of mail could be stored until sorted by House mail clerks.

Section 1708 would unquestionably protect mail delivered directly to a receptacle at a Congressman's office. *United States v. Rosen*, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1917); *United States v. Lopez, supra; United States v. Sehon Chinn*, 85 F.Supp. 558 (D.W.Va.1949). A letterbox used in common by multiple addressees located within one building is also protected under federal law as an authorized depository. *United States v. Brown*, 551 F.2d 236 (8th Cir. 1977); *Wade v. United States*, 457 F.2d 335 (9th Cir. 1972); *Smith v. United States, supra*. When sheer volume requires that mail be delivered to an office rather than to a mailbox, section 1708 must also be extended to safeguard that office as an "other authorized depository for mail matter." A contrary conclusion would unduly circumscribe federal protection of the mail and serve to punish, rather than to promote, innovations which foster an efficient postal system.

■ Appellant further contends that, if the House Post Office is an authorized depository, then the federal interest in the mail terminated when he lawfully took possession of the mail during the regular course of his duties as a mail clerk. Although appellant's reasoning is sound, his premise of lawful possession is fallacious.

Appellant's argument is founded on several decisions holding that the protection afforded by section 1708 ends once the mail is lawfully removed from an authorized depository, even if stolen before it reaches the addressee. However, in each of these cases, the lawfulness of possession was predicated on one of two grounds, neither of which is germane here.

First, appellant was simply an employee of the House Post Office and thus did not obtain possession of the checks through misdelivery or because they were intended for someone who shared the use of appellant's mailbox. *See United States v. Lavin*, 567 F.2d 579 (3d Cir. 1977); *United States v. Anton*, 547 F.2d 493 (9th Cir. 1976); *United States v. Ashford*, 530 F.2d 792 (8th Cir. 1976); *United States v. Davis*, 461 F.2d 83 (5th Cir.), *cert. denied*, 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972). Second, no Congressman, including Representative Lott, ever designated appellant as an agent authorized to receive mail on his or her behalf. *See United States v. Logwood*, 360 F.2d 905 (7th Cir. 1966); *United States v. Chapman*, 179 F.Supp. 447 (E.D.N.Y.1959); *United States v. Driscoll*, 25 Fed.Cas. 914 (No. 14,-994) (D.Mass.1869). The House Post Office alone authorized appellant to handle Congressional mail, and then only for the purpose of delivering it.

The nature of appellant's duties as a mail clerk demonstrates that he functioned merely as a component of the authorized

depository. The federal interest thus prevailed until the House Post Office relinquished control of the mail by distributing it to the appropriate Congressional office.[2]

As a second ground for reversal appellant argues that the evidence at trial established embezzlement of mail, and not possession of stolen mail as was charged in the indictment. Appellant, however, fails to articulate any way in which this alleged variance prejudiced either his defense to the present charge or a defense of double jeopardy to a future prosecution. *See Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Childs,* 598 F.2d 169 (D.C.Cir.1979). Assuming that such an allegation had been made, we hold that there was no variance between the indictment and the evidence.

The crime of possession of stolen mail under section 1708 requires proof that the checks had been stolen from the mail, that the accused intended to possess the checks, and that the accused knew the checks were stolen. *United States v. Hines,* 256 F.2d 561 (2d Cir. 1958). Stipulated testimony proved that the checks were placed into the mail and not received. Since no other reasonable explanation was offered for the non-delivery of the checks, the court was free to infer that they were stolen

from the mail. *United States v. Hawkins,* 614 F.2d 85 (5th Cir.), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2926, 64 L.Ed.2d 814 (1980); *United States v. Mooney,* 417 F.2d 936 (8th Cir. 1969), *cert. denied,* 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970). Moreover, testimony that appellant possessed the checks within a week after they were mailed, that he attempted to cash them without authorization, and that he fled from scrutiny, permitted an inference that he knowingly possessed the stolen checks. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Webb v. United States,* 347 F.2d 363 (10th Cir. 1965); *United States v. Hines, supra.* The evidence thus conformed to, and proved, the indictment's charge of possession of stolen mail.

In conclusion, we find that appellant was indicted for, and properly convicted of, possession of mail stolen from an "authorized depository" in violation of section 1708.

AFFIRMED.

---

2.  Due to our holding that the checks were stolen from an authorized depository, we need not decide whether the federal interest reflected in section 1708 is coterminous with that underlying 18 U.S.C. § 1702. The latter statute explicitly continues the federal interest in the mail until "it has been delivered to the person to whom it was directed." Conflicting opinions have issued from the circuit courts regarding the comparative scope of the two statutes. *Compare United States v. Lavin, supra* and

*United States v. Davis, supra* (finding both statutes to protect mail until received by the addressee) *with United States v. Ashford, supra; McCowan v. United States,* 376 F.2d 122 (9th Cir.), *cert. denied,* 389 U.S. 839, 88 S.Ct. 66, 19 L.Ed.2d 102 (1967), and *United States v. Logwood, supra* (finding only section 1702 to protect mail until received by the addressee). We note that appellant's conduct is prosecutable also under section 1702, *see United States v. Brusseau,* 569 F.2d 208 (4th Cir. 1977).