**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Terry L. STEMMONS, Defendant—
Appellant.**

No. 03–10169.

D.C. No. CR–02–01155–JAT.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 16, 2004.*

Decided Feb. 4, 2004.

Joan G. Ruffennach, Paul V. Rood, USPX—Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Jon M. Sands, FPDAZ—Federal Public Defender's Office, Phoenix, AZ, for Defendant–Appellant.

Before WALLACE, McKEOWN, Circuit Judges, and MOSKOWITZ, District Judge.**

### MEMORANDUM***

Appellant Terry L. Stemmons ("Appellant") appeals from his conviction of three counts of Possession of Stolen Mail in violation of 18 U.S.C. § 1708. Stemmons contends that there was insufficient evidence to prove that the mail was stolen from an authorized U.S. postal mailbox. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

ability of relief under NACARA, but that claim was not presented in this petition for review.

\* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

\*\* The Honorable Barry Ted Moskowitz, District Judge for the Southern District of California, sitting by designation.

\*\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

There is sufficient evidence to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original) (citation omitted); *United States v. Odom,* 329 F.3d 1032, 1034 (9th Cir.2003).

■ To obtain a conviction for violating 18 U.S.C. § 1708, "[t]he government does not need to prove that the [items] were taken from a 'mail receptacle . . . or other authorized *[mail]* depository.' All the government needs to prove is that the [items] possessed by [the defendant] had been stolen from the mail. . . ." *Wade v. United States,* 457 F.2d 335, 337 (9th Cir.1972) (italicized brackets indicate alteration in original) (citation omitted).

A trier of fact may infer that mail found in the defendant's possession was stolen from the fact that a properly addressed and recently mailed item was never received by the addressee. *See United States v. Gardner,* 454 F.2d 534, 536 (9th Cir.1972) (jury could reasonably infer that items placed in a preaddressed, postage prepaid "save-by-mail" envelop were stolen when later found in defendant's possession); *Wade,* 457 F.2d at 337 (jury could reasonably infer that properly addressed, recently mailed, and never received letters sent to two different students who resided at the same fraternity house were stolen); *United States v. Birnstihl,* 441 F.2d 368, 369 (9th Cir.1971).

The government has met its burden here. Appellant had in his possession properly addressed items of first class mail that had been sent through the mail, which the addressees had not received. In light of these facts, a reasonable jury could conclude that the property was "stolen from the mail."

*United States v. Patterson,* 664 F.2d 1346 (9th Cir.1982), is distinguishable. In *Patterson,* we declined "to create an involuntary agency relationship" between the U.S. Postal Service and the Y.M.C.A. when the Postal Service delivered mail to the Y.M.C.A. front desk and Y.M.C.A. employees took complete control of the mail thereafter. 664 F.2d at 1347–48. Because the carriers transferred the mail to a third party, the Y.M.C.A., we required proof that the boxes or the employees were authorized by the U.S. Postal Service. *Id.*

In this case, there is no evidence that a third party regularly took control of the mail. It is clear that a postal carrier directly delivered mail to the central mailbox. Residents accessed their mail by using their individual keys to unlock their personal boxes. Had Appellant presented evidence that a manager of the apartment building or someone other than a postal carrier placed the mail in the residents' boxes, *Patterson* would require further proof that such person or the depository itself was in fact authorized by the U.S. Postal Service. However, no such proof is required here because the postal carrier directly delivered the mail by placing it in the central mailbox.

■ Moreover, a reasonable jury could infer that the mailbox at issue was an authorized U.S. depository. The Domestic Mail Manual reads: "every letterbox or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route, highway contract route, or other mail route is designated an authorized depository for mail within the meaning of 18 U.S.C. [sections] 1702, 1705, 1708, 1725." *Domestic Mail Manual* D041 § 1.1 (2003), *incorporated by reference,* 39 C.F.R. § 111.1 (2003).

The record indicates that both postal carriers and residents intended and used the community mailbox for the receipt and delivery of mail. U.S. postal carriers delivered mail directly to the residents via the central mailbox. Residents placed mail in the mailbox's outgoing slot for U.S. postal carriers to pick up. U.S. postal carriers also maintained the mailbox, stored U.S. Postal Service property in the mailbox, and assumed responsibility for re-delivery of the mail. Since the record contains substantial evidence that both postal carriers and residents intended for and used the central mailbox as a mail receptacle in accordance with the U.S. Postal Service guidelines, a reasonable jury could conclude that the community mailbox was in fact an authorized U.S. mail depository.

**AFFIRMED.**